**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| POWER THE FUTURE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action Nos.: | 24-346 (RC), |
| | : | | 24-684 (RC) |
| | : | | |
| v. | : | Re Document No.: | 8 |
| | : | | |
| U.S. DEPARTMENT OF STATE, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Plaintiff Power the Future sued the United States Department of State under the Freedom

of Information Act ("FOIA") after requesting a record listing the names of federal employees

working in the Office of the Special Envoy for Climate ("SPEC").  The Department of State

released the record with the names of low-level employees redacted and subsequently re-released

the record with only two names withheld.  The Department of State now moves for dismissal and

for summary judgment.  Although Power the Future's complaints claim entitlement to expedited

processing and costs and fees, the primary remaining issue at this stage revolves around the State

Department's decision to withhold the names of those two low-level employees under

Exemption 6 based on personal privacy concerns.  The Court determines that Power the Future's

expedited processing claim is moot, that its claim to costs and fees must be resolved through a

post-judgment motion, and that the Department of State properly applied Exemption 6 to the

record at issue.  The Court thus grants Defendant's motion.

## II.  FACTUAL BACKGROUND

Power the Future submitted a FOIA request to the Department of State on January 22, 2024, seeking a record listing the names, job titles, and salaries of federal employees working for SPEC.  *See* Ex. A to Am. Compl. ("FOIA Request") at 1, No. 24-cv-346 (D.D.C. Feb. 21, 2024), ECF No. 4-1.[1]  Power the Future asserted that the State Department had previously released the record with employee names and at least one job title redacted, but that it now requested the record in its entirety.  *See id.*  Power the Future additionally sought expedited processing for its request.  *See id.*  To justify its request for expedited processing, Power the Future cited news articles criticizing SPEC's redaction of employee names, the State Department's plans to release employee names at a later date, and the office's "controversial agenda" to "combat[] the climate crisis."  *Id.* at 3–4.  Power the Future also claimed that an American non-profit, the United Nations Foundation, had been funding climate-related positions in state government offices.  *Id.*

Eleven business days later, Power the Future sued the Department of State under FOIA, claiming a right to expedited processing, that the State Department had a duty to produce the record, and costs and fees.  *See* Compl., No. 24-cv-346 (D.D.C. Feb. 6, 2024), ECF No. 1.  Recognizing that the original complaint may have been filed too early, Power the Future then filed the same complaint as an amended complaint on February 21, 2024.  *See* Am. Compl., No. 24-cv-346 (D.D.C. Feb. 21, 2024), ECF No. 4.  On March 9, 2024, Power the Future filed a nearly identical complaint in a new lawsuit, omitting the expedited processing claim.  *See*

---

[1] Unless otherwise specified, ECF references in this opinion refer to the docket for Case No. 24-cv-684, which contains the parties' briefing.

The parties do not dispute that the FOIA request attached to the complaint was submitted to the Department of State, and the Court thus considers it part of the summary judgment record. *See* Pl.'s Response to Defendant's Statement of Undisputed Facts ¶ 4, ECF No. 11-1.

Compl. ("Second Compl."), ECF No. 1.  Power the Future explained that it filed the new lawsuit "solely out of an abundance of caution and because the United States has occasionally asserted an amendment cannot add a cause of action which was not yet ripe at the time of the original complaint."  Second Compl. at 1 n.1.  The Court later consolidated these actions.  *See* Min. Order dated Apr. 26, 2024.

On March 22, 2024, the Department of State produced the record at issue, withholding the names of most staff members under FOIA Exemption 6, but releasing job titles and salaries in full.  *See* Ex. A to Pl.'s Resp. to Mot. Dismiss and Summ. J., ECF No. 11-3.  The Department of State then moved to dismiss the expedited processing claim for lack of jurisdiction and for summary judgment on its withholding of staff member names.  *See generally* Def.'s Mot. Dismiss and Summ. J. ("Def.'s Mot."), ECF No. 8.  Power the Future opposed this motion.  *See* Pl.'s Resp. to Mot. Dismiss and Summ. J. at 12–17 ("Pl.'s Opp'n"), ECF No. 11.[2]  In that filing, Power the Future claimed that many SPEC employees listed their employment publicly.  *See id.* On July 11, 2024, the Department of State "decided to make a re-release of the document lifting the redactions over the names of any individuals who appear to have voluntarily disclosed their employment with SPEC online."  Suppl. Biniaz Decl. ¶ 13, ECF No. 13-1.  That version of the record withheld only two names—those of a policy analyst and a special assistant.  *See id.* ¶ 14;

---

[2] The title of Power the Future's filing indicates that it is not only an opposition to the Department of State's dispositive motion, but that it represents its own "Motion for Summary Judgment."  *See* Pl.'s Opp'n.  The Department points out, however, that "Plaintiff did not cross-move for summary judgment.  Instead, it merely responded to Defendant's summary judgment motion."  *See* Def.'s Sur-Reply at 4, ECF No. 16.  The Court agrees that Power the Future's opposition does not represent a cross-motion for summary judgment.  The filing is accompanied by no such motion, does not claim to seek summary judgment, *see* Pl.'s Opp'n at 17, and contains no statement of material facts as to which Power the Future contends there is no genuine issue, *see* Local Civ. R. 7(h).

Ex. B to Pl.'s Sur-Reply, ECF No. 15-2. The scope of the lawsuit has thus narrowed to whether

the State Department properly withheld these two names under Exemption 6.

## III.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action

or claim when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion for

dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase*

*v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Federal courts are courts of limited jurisdiction,

and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian*

*Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Thus, on a Rule 12(b)(1) motion, the

plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence."

*Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91 (D.D.C. 2020); *see also Lujan v. Defs. of Wildlife*,

504 U.S. 555, 561 (1992).

### B.  Rule 56

The Freedom of Information Act is meant "to pierce the veil of administrative secrecy

and to open agency action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S.

164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). It "directs that

'each agency, upon any request for records . . . shall make the records promptly available to any

person' unless the requested records fall within one of the statute's nine exemptions." *Loving v.*

*Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(a)(3)(a)). "Consistent

with the Act's goal of broad disclosure," those exemptions should be "given a narrow compass."

*U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989). "The agency bears the burden of

establishing that a claimed exemption applies." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).

Because FOIA cases do not ordinarily involve disputed facts, they "are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009) (citations omitted). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing whether the movant has met that burden, a court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008) (citations omitted). "This burden does not shift even when the requester files a cross-motion for summary judgment because 'the Government ultimately has the onus of proving that the documents are exempt from disclosure.'" *Hardy v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017) (cleaned up) (quoting *Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*, 185 F.3d 898, 904–05 (D.C. Cir. 1999)).

Even if a FOIA exemption applies, an agency cannot withhold information unless it also "reasonably foresees that disclosure would harm an interest protected by" the exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I); *see Leopold v. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024) ("Even if an exemption covers an entire agency record, the agency still must release any reasonably segregable information within the record that could be disclosed without causing reasonably foreseeable harm to an interest that the exemption protects."); *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021) (explaining the FOIA Improvement Act of 2016's "foreseeable harm" requirement).

## IV.  ANALYSIS

Power the Future raises three claims across its consolidated lawsuits, seeking entitlement to expedited processing, costs and fees, and production of the record in full.  The Department of State moves to dismiss the expedited processing claim because it has produced the record Power the Future requested.  Def.'s Mot. at 4–7.  The Department also seeks summary judgment on the basis that Power the Future failed to exhaust its administrative remedies regarding record redactions by filing a lawsuit eleven business days after its FOIA request.  *See id.* at 14–17.  Finally, the Department seeks summary judgment on its decision to withhold employees' names under Exemption 6.[3]  *See id.* at 18–34.  Power the Future opposes dismissal of the expedited processing claim, claims that it was not required to exhaust its administrative remedies, and argues that the Department improperly withheld the redacted names.  *See generally* Pl.'s Opp'n. The Court proceeds through each of these issues in turn.

### A.  Expedited Processing

Count One of Power the Future's Amended Complaint in the original lawsuit claims that it is entitled to expedited processing of its FOIA request.  *See* Am. Compl. ¶¶ 38–47.  The Department of State moves to dismiss this claim because it has now provided the relevant record, meaning that the Court now lacks jurisdiction over the expedited processing claim.  *See* Def.'s Mot. at 5–7.  In the alternative, the Department seeks summary judgment because Power the Future fails to show that it is entitled to expedited processing.  *See id.* at 7–14.  Power the Future asserts that its expedited processing claim "has been overtaken by events and the only remaining

---

[3] The Department of State argues that it conducted an adequate search and satisfied its segregability obligations.  *See* Def.'s Mot. at 17–18, 35–36.  Power the Future does not dispute these assertions, which are supported by the record.  *See generally* Pl.'s Opp'n.; *see also* Pl.'s Response to Defendant's Statement of Undisputed Facts ¶¶ 23–24 (describing the Department's search).

'live' dispute as to the document itself is with respect to redactions." Pl.'s Opp'n at 5. Power the Future nonetheless contends that the claim is not moot because it is still entitled to fees and because it "is entitled to a 'complete' response, not just 'a response' to its request." *Id.* The Court agrees with the Department that its release of the redacted record mooted Power the Future's expedited processing claim, and that litigation of costs and fees must await a post-judgment motion.

FOIA provides for the expedited processing of records requests when a requestor shows a compelling need. *See* 5 U.S.C. § 552(a)(6)(E)(i). A "compelling need" exists (1) when failure to timely obtain the records "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual" or (2) when the requestor is "primarily engaged in disseminating information" and there exists an "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v). An agency's denial or delay in responding to a request for expedited processing is subject to judicial review "based on the record before the agency at the time of the determination." *Id.* § 552(a)(6)(E)(iii). However, a district court "shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." *Id.* § 552(a)(6)(E)(iv); *see also Khan v. U.S. Dep't of Homeland Sec.*, No. 22-cv-2480, 2023 WL 6215359, at *6 (D.D.C. Sept. 25, 2023) ("To the extent [d]efendants have already fully responded to [p]laintiffs' requests . . . the Court would lack jurisdiction over failure-to-expedite claims based on them.").

An agency has provided a "complete response to the request" once it has issued a decision and produced all documents as to which no exemption is being claimed. *See Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013); *see also id.* at 296 ("[T]he only scenario

in which a court can properly grant relief to a FOIA requester 'on the merits' of an expedited

processing claim is when an agency has not yet provided a final substantive response to the

individual's request for records."); *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 76 n.3

(D.D.C. 2018), on reconsideration in part, 442 F. Supp. 3d 240 (D.D.C. 2020) (finding expedited

processing claim moot after agency "completed its processing of [p]laintiffs' request"); *Stein v.*

*Cent. Intel. Agency*, 454 F. Supp. 3d 1, 16 (D.D.C. 2020) (observing that expedited processing

denial claim was moot "because all Defendant agencies have issued a final decision on [the

plaintiff's] requests"); *Jud. Watch, Inc. v. U.S. Naval Observatory*, 160 F. Supp. 2d 111, 112

(D.D.C. 2001) (concluding that the agency "provided a complete response to the request for

records" when it reported "that after a diligent search, it could not locate any responsive

documents").  This makes sense, as when an agency has yet to deny a request for expedited

processing, FOIA provides judicial review only for a "failure by an agency to respond in a timely

manner to such a request."  5 U.S.C. § 552(a)(6)(E)(iii).  A court order in those circumstances

could only require the agency to hasten its decision whether to grant expedited processing.  Yet

such an order would be of no use once the agency has completed its processing of records, as the

decision to grant or deny expedited processing is no longer relevant.

Power the Future argues that its expedited processing claim remains viable because "the

Department has elected not to provide that document in its *complete* form."  Pl.'s Opp'n at 6.

But "[t]his argument erroneously conflates the completeness of the Department's response to

Power the Future's request with the adequacy of its response."  Def.'s Reply at 3, ECF No. 13;

*see also Muttitt*, 926 F. Supp. 2d at 296 ("In order for its response to be 'complete,' an agency

need not . . . obtain a judicial declaration that its search efforts were adequate or that its

withholding determinations were warranted.").  The Department of State has conducted its

search, applied exemptions it deems appropriate, and produced the requested record to the requestor.  There is nothing more to expedite, and the remaining issue is whether the agency has "improperly withheld" any records from Power the Future under Exemption 6.  5 U.S.C. § 552(a)(4)(B).  This Court thus lacks jurisdiction over the expedited processing issue.

In addition, "a plaintiff's attorney's fees claim cannot of its own accord keep alive any merits claim that would otherwise be moot."  *Willson v. Comm'r*, 805 F.3d 316, 321 n.2 (D.C. Cir. 2015); *see also Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) ("This interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim").  Power the Future's claim to attorney's fees— Count Three of its Amended Complaint—must instead be brought in a post-judgment motion filed after the entry of judgment.  *See* Fed. R. Civ. P. 54(d)(2)(B)(i).

As Power the Future's expedited processing claim is moot, the Department of State's motion to dismiss that count for lack of subject matter jurisdiction is granted.  The Court accordingly does not address the Department of State's argument that Power the Future failed to demonstrate that expedited processing was warranted.

## B.  Exhaustion

The Department of State next argues that Power the Future did not exhaust its administrative remedies for its remaining claim regarding application of Exemption 6.  *See* Def.'s Mot. at 14–17; *see also* Am. Compl. ¶¶ 48–57 (claiming that the Department unlawfully withheld the requested record).  The Department reasons that FOIA provides the agency twenty business days to determine whether to comply with a records request, and that Power the Future's inclusion of this claim in a lawsuit after eleven business days cannot be cured by filing

new complaints.  *See* Def.'s Mot. at 14–17.  Power the Future argues that the claim became ripe

when it filed an amended complaint and a new lawsuit.  *See* Pl.'s Opp'n at 7–8.

"FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial

review."  *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1259 (D.C. Cir. 2003).  In

*Hidalgo*, the Circuit observed that "failure to exhaust precludes judicial review if 'the purposes

of exhaustion' and the 'particular administrative scheme' support such a bar."  *Id.* at 1258–59

(quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)).  Exhaustion

requirements exist in part to "prevent[] premature interference with agency processes."  *Id.* at

1259 (quoting *Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993)).  It is further true that "one

purpose of exhaustion is to deter requesters from suing prematurely in order to give the agency

and requester a chance to resolve or narrow their disputes without burdening federal courts."

*Heritage Found. v. U.S. Dep't of Just.*, 719 F. Supp. 3d 95, 98 (D.D.C. 2024).  Power the

Future's original complaint filed just eleven business days after submission of its request could

be seen as interfering prematurely with the Department of State's FOIA processes.

Power the Future's unlawful withholding claim would likely be barred if it had not filed

or sought to file an amended complaint.  The court in *Heritage Foundation*, for instance, granted

judgment on the pleadings to the agency because the requestor filed suit one day early.  *See* 719

F. Supp. 3d at 97–98.  The court rejected the notion that the plaintiffs' claims could later become

ripe because they "had not satisfied the exception's requirement *at the time they filed suit—the*

relevant time period for the exhaustion inquiry."  *Id.* at 98 (emphasis added); *see also Wilbur v.*

*Cent. Intel. Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam) ("Exhaustion of

administrative remedies is generally required *before* seeking judicial review." (emphasis added)).

There is no indication, however, that the plaintiffs in *Heritage Foundation* filed or sought to file

an amended complaint. In contrast, some courts in this Circuit have allowed plaintiffs to cure their premature FOIA complaints by filing amended or supplemental complaints once the statutory time period has passed. *See Brown v. U.S. Citizenship & Immigr. Servs.*, No. 23-cv-3669, 2024 WL 4253121, at *3–5 (D.D.C. Sept. 20, 2024); *Jud. Watch, Inc. v. U.S. Dep't of Energy*, 191 F. Supp. 2d 138, 139 (D.D.C. 2002).

The Department cites caselaw interpreting Title VII's exhaustion requirement for the notion that FOIA's 20-day window represents a mandatory waiting period that cannot be cured by filing an amended complaint. *See* Def.'s Mot. at 16–17 (discussing *Murthy v. Vilsack*, 609 F.3d 460 (D.C. Cir. 2010) and *Jones v. Dep't of Just.*, No. 15-5246, 2017 WL 3895064 (D.C. Cir. July 14, 2017)). Yet those opinions appear to rely on the particular nature of Title VII, under which Congress hoped the Equal Employment Opportunity Commission would resolve the majority of lawsuits, and a "private lawsuit [would] be the exception and not the rule." *Murthy*, 609 F.3d at 464 (quoting *Martini v. Fed. Nat. Mortg. Ass'n*, 178 F.3d 1336, 1346 (D.C. Cir. 1999)). The Department does not explain why the same reasoning would apply to the different statutory scheme governing FOIA lawsuits, *compare* 42 U.S.C. § 2000e-16(c), *with* 5 U.S.C. §§ 552(a)(6)(A), (a)(4)(B), advancing only the conclusory argument that the Title VII cases' "rationales appl[y] with equal force to FOIA exhaustion." Def.'s Mot. at 17. This is particularly important because exhaustion in the FOIA context is "a prudential consideration rather than a jurisdictional prerequisite." *Wilbur*, 355 F.3d at 677. The Court is thus not convinced that the same principles apply here.

The Court ultimately need not decide this exhaustion issue, which is not jurisdictional in nature "because the FOIA does not unequivocally make it so." *Wilbur*, 355 F.3d at 677 (quoting *Hidalgo*, 344 F.3d at 1258). As the Department of State properly applied Exemption 6 to the

records at issue, and the FOIA claim fails on its merits, it is of no moment whether Power the

Future properly exhausted its administrative remedies.

### C. Exemption 6

Power the Future claims that the Department of State has unlawfully withheld the record

it requested, which lists SPEC employee names, positions, and salaries. *See* Am. Compl. ¶¶ 48–

57. The Department moves for summary judgment on this issue, contending that it has released

the record with employee names properly redacted under FOIA Exemption 6. *See* Def.'s Mot. at

18–34. Application of Exemption 6 is appropriate, the Department argues, because there is a

cognizable personal privacy interest in the employees' names and no public interest in their

disclosure. *See id.* Power the Future responds that the exemption does not apply to federal

employees who may influence policy. *See* Pl.'s Opp'n at 10–17; Pl.'s Sur-reply at 4–6. The

Court concludes that a wealth of precedent supports the Department of State's decision to

withhold the employee names under Exemption 6.

### 1. Legal Standard for Exemption 6

Exemption 6 applies to "personnel and medical files and similar files the disclosure of

which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C.

§ 552(b)(6). There are three stages to analyzing whether Exemption 6 properly applies. *See*

*Perioperative Servs. & Logistics, LLC v. U.S. Dep't of Veterans Affs.*, 57 F.4th 1061, 1067 (D.C.

Cir. 2023). First, the analysis "requires . . . a determination of whether the document in question

qualifies as a 'personnel, medical, or similar file.'" *Jud. Watch, Inc. v. Dep't of the Navy*, 25 F.

Supp. 3d 131, 140 (D.D.C. 2014) (quoting *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d

1224, 1228 (D.C. Cir. 2008)). The term "similar files" is "construed broadly and is 'intended to

cover detailed Government records on an individual which can be identified as applying to that

individual.'" *Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 105–06 (D.D.C. 2010) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)). Because Power the Future does not contest the Department of State's characterization of the information withheld as "similar files," *see* Def.'s Mot. at 19; Pl.'s Opp'n at 10–17, the Court will not analyze this issue further.

Second, the Court must "determine whether there is a 'substantial' privacy interest in preventing the document[s'] disclosure." *Jud. Watch*, 25 F. Supp. 3d at 140 (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). "[U]se of the word substantial in this [FOIA] context, means less than it might seem. A substantial privacy interest is anything greater than a *de minimis* privacy interest." *Multi Ag Media*, 515 F.3d at 1229–30.

Third, if a substantial privacy interest has been identified, then the Court must "determine whether [the records'] disclosure 'would constitute a clearly unwarranted invasion of personal privacy'" within the meaning of the statute. *Id.* at 1228 (quoting 5 U.S.C. § 552(b)(6)). To do this, the Court "balance[s] the privacy interest that would be compromised . . . against any public interest in the requested information." *Id.*; *see also Sullivan v. Veterans Admin.*, 617 F. Supp. 258, 260 (D.D.C. 1985) (describing two steps to the balancing analysis: first, "identify[ing] the nature and magnitude of the various interests involved" and second, "balancing these competing interests"). To establish a public interest, a plaintiff must show "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and that "the information is likely to advance that interest." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004).

2. Application to SPEC Employee Names

The Circuit has consistently held that "federal employees[] have privacy interests in their names . . . that must be protected." *Painting & Drywall Work Pres. Fund, Inc. v. Dep't of Hous. & Urb. Dev.*, 936 F.2d 1300, 1302 (D.C. Cir. 1991) (quoting *Fed. Lab. Rels. Auth. v. U.S. Dep't of Treasury, Fin. Mgmt. Serv.*, 884 F.2d 1446, 1453 (D.C. Cir. 1989)). However, "[t]he scope of a privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted." *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996). Although "[t]he privacy interest of civilian federal employees includes the right to control information related to themselves and to avoid disclosures that 'could conceivably subject them to annoyance or harassment in either their official or private lives,'" *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 116 (D.D.C. 2005) (quoting *Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980)), this "does not authorize a 'blanket exemption' for the names of all government employees in all records," *id.* (quoting *Baez v. U.S. Dep't of Just.*, 647 F.2d 1328, 1338 (D.C. Cir. 1980)). Rather, "[t]o justify [its] Exemption 6 withholdings, the defendant[] must show that the threat to employees' privacy is real rather than speculative." *Id.*

Here, the Department of State argues that the privacy interest is substantial because the requested names belong to low-level employees who may be subjected to harassment because of their positions. *See* Def.'s Mot. at 19–26. The employees are "civil servants charged with conducting the day-to-day activities necessary for the SPEC office to function." Biniaz Decl. ¶ 16, ECF No. 8-3. They "advise SPEC's more senior staff" and "do not determine policies or priorities." *Id.* "[L]ow-level government employees . . . have a heightened privacy interest." *Insider, Inc. v. U.S. Gen. Servs. Admin.*, 635 F. Supp. 3d 1, 4 (D.D.C. 2022) (citing *Common*

*Cause v. Nuclear Regul. Comm'n*, 674 F.2d 921, 938 (D.C. Cir. 1982)); *see also Wash. Post Co. v. Special Inspector Gen. for Afghanistan Reconstruction*, No. 18-cv-2622, 2021 WL 4502106, at *15 (D.D.C. Sept. 30, 2021) ("[I]t is well-established that lower-level government employees in general have a privacy interest in their identities.").

A separate privacy interest exists because the Department of State demonstrates that these employees may be subjected to harassment based on their work for the federal government. A SPEC official states that the office has witnessed "a significant uptick in partisan and threatening posts on social media by individuals seeking to identify SPEC staff" in response to previous FOIA requests and congressional investigations. Biniaz Decl. ¶ 10. These posts have accused SPEC employees of being "corrupt" and "criminals" who should be arrested. *Id.* ¶ 11. People have also found publicly available email addresses for the SPEC office and sent emails threatening that "you are all going down," and hoping that the office's head is poisoned or that his "jet crashes." *Id.* The official therefore determined that "release of a list of the names of the SPEC staff would operate as a 'hit list' subjecting civil servants to relentless attacks based solely on their association with SPEC." *Id.* ¶ 12. Power the Future's own characterization of SPEC as "highly controversial" and unsupported assertions of impropriety only add further credence to the Department of State's concerns. *See* Pl.'s Opp'n at 1; FOIA Request at 3–4.

Judges in this Circuit have regularly approved use of Exemption 6 to withhold the names of federal employees due to concerns of harassment and threats in connection with their duties. *See Magassa v. Transp. Sec. Admin.*, No. 22-cv-5155, 2023 WL 8826564, at *2 (D.C. Cir. Dec. 21, 2023) (upholding application of exemption to TSA employees "whose sensitive positions might subject them to a heightened risk of harassment or harm"); *Long v. Immigr. & Customs Enf't*, 279 F. Supp. 3d 226, 244 (D.D.C. 2017) (upholding application of exemption to names of

ICE employees because release "would subject those individuals to targeted, unauthorized, and potentially malicious inquiries about their work; even harassment"); *Sarras v. U.S. Dep't of Just.*, No. 19-cv-0861, 2023 WL 6294164, at *10 (D.D.C. Sept. 27, 2023) (upholding application of exemption where "release of the employees' personal information 'could subject them to harassment and unwanted publicity'"); *Jud. Watch, Inc. v. U.S. Dep't of State*, 875 F. Supp. 2d 37, 47 (D.D.C. 2012) (observing, regarding federal employees, that "[t]here is a substantial interest in bits of personal information where there is a justified and articulable risk of media harassment"); *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 118 (D.D.C. 2005) (upholding application of exemption because federal employees had a "privacy interest . . . in avoiding the unwanted contact or harassment that would result from the release of their names"); *cf. U.S. Dep't of State v. Ray*, 502 U.S. 164, 164, 176 n.12 (1991) (affirming under Exemption 7(C) where "disclosure of the [individuals'] names would be a significant invasion of their privacy because it would subject them to possible embarrassment and retaliatory action").

Power the Future argues that the federal employees lack a cognizable privacy interest. *See* Pl.'s Opp'n at 10–12. "Exemption 6 case law," it argues, "generally requires agency employees' names to be released, even when that would not shed light on policymaking." *Id.* at 10. This assertion is unsupported by caselaw in this Circuit. *See, e.g.*, *Baez*, 647 F.2d at 1339 (requiring case-by-case balancing of the privacy interest against the public interest). The cases Plaintiff cites—including one interpreting California state law—do not convince the Court otherwise. *See id.*; *see also Am. Oversight, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 17-cv-827, 2022 WL 1719001, at *18–19 (D.D.C. May 27, 2022), *rev'd and remanded, Am. Oversight v. U.S. Dep't of Health & Hum. Servs.*, 101 F.4th 909 (D.C. Cir. 2024) (interpreting Exemption 5); *Nat'l W. Life Ins. Co. v. United States*, 512 F. Supp. 454 (N.D. Tex. 1980) (45-

year-old, out-of-circuit district court opinion); *Int'l Fed'n of Pro. & Tech. Eng'rs, Loc. 21, AFL-CIO v. Superior Ct.*, 42 Cal. 4th 319, 327 (2007) (interpreting California Public Records Act).[4]

The Department further argues that there is no public interest in disclosing the withheld names. Def.'s Mot. at 26–33. Power the Future responds that there is a "public interest in the identities of those individuals that State admits advise 'more senior' officials in a highly controversial office." Pl.'s Opp'n at 12. Power the Future seeks to equate these government employees with "people lobbying government officials." *Id.* at 11. The Court does not follow this analogy. The federal employees are not "well-connected corporate lobbyists," *Elec. Frontier Found. v. Off. of the Dir. of Nat. Intel.*, 639 F.3d 876, 887 (9th Cir. 2010) (cited in Pl.'s Opp'n at 11), but rather public servants. It is entirely unsurprising that civil servants with "expertise in climate science and policy" might advise more senior policymakers wrestling with difficult decisions. Suppl. Biniaz Decl. ¶ 8. Power the Future does not rebut the presumption that the relevant employees are "neutral and apolitical," and there is no indication that the employees unlawfully "advocate for specific interest groups, industries, companies or individuals." *Id.* Indeed, courts attach "weight to the powerful and realistic presumption that the federal work force consists of dedicated and honorable civil servants." *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 476 (1995). It is further unclear how releasing the names

---

[4] Power the Future submitted a notice of supplemental authority, stating that a recent D.C. Circuit opinion "undermines the State Department's argument that the mere names of its employees may be exempted from disclosure in this case under Exemption 6." Notice of Supplemental Authority at 2, ECF No. 20 (discussing *Hum. Rts. Def. Ctr. v. United States Park Police*, No. 23-5236, 2025 WL 286516 (D.C. Cir. Jan. 24, 2025)). Yet the Circuit's opinion in that case rested on the conclusion that the agency's declarations were conclusory and did not substantiate the employees' privacy interests. *See id.* at *3–5. The case thus has no bearing on whether Exemption 6 may be used to withhold employee names as a general matter. Furthermore, as discussed above, the State Department has provided detailed reasoning as to why the employee names in this case should not be released.

of these federal employees—rather than their otherwise-releasable work product—would "shed[] light on an agency's performance of its statutory duties" or the "agency's own conduct." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989); *see also Beck v. Dep't of Just.*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (noting that the identities of "one or two" government employees, "released in isolation, does not provide information about the agency's own conduct"); *Smith v. Dep't of Lab.*, 798 F. Supp. 2d 274, 284 (D.D.C. 2011) ("Federal civilian employees . . . have a protectible privacy interest in purely personal details that do not shed light on agency functions.").[5]

In this case, the privacy interest in avoiding harassment and targeting of low-level civil service employees outweighs whatever public interest may be served by disclosing those employees' names. "[I]t is generally accepted in this circuit that the public interest in the identities of low-level employees does not usually outweigh the individuals' privacy rights, as they are not typically decision-makers such that disclosure of their names would shed light on 'what the government does.'" *Wash. Post Co. v. Special Inspector Gen. for Afghanistan Reconstruction*, No. 18-cv-2622, 2021 WL 4502106, at *15 (D.D.C. Sept. 30, 2021). This case is similar to *Judicial Watch, Inc. v. FDA*, where the requestors challenged the FDA's citation of Exemption 6 when redacting "the names of agency personnel . . . who worked on the approval of mifepristone." 449 F.3d 141, 152 (D.C. Cir. 2006). The court noted that Exemption 6 may

---

[5] Power the Future does not raise its claim regarding the United Nations Foundation in its briefing. *See* FOIA Request at 3; *see generally* Pl.'s Opp'n; Pl.'s Sur-Reply. Even if it had raised the issue, Power the Future "offers nothing but speculation to suggest" that the United Nations Foundation is funding a position within SPEC. *Perioperative Servs.*, 57 F.4th at 1068. "Mere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991). In addition, disclosing SPEC employee names would not advance Power the Future's purported interest in identifying individuals supported by non-governmental organizations. *See* Def.'s Mot. at 33.

properly be applied to individuals' identities, and it then balanced the public and private interests. *See id.* at 153. "As its privacy interest, the FDA cited the danger of abortion-related violence to those who developed mifepristone." *Id.* The court reasoned that this privacy interest in avoiding threats or harassment was stronger than the privacy interest in nondisclosure of names associated with unclaimed funds at banks in FDIC receivership, which it had previously found sufficient to withhold identities. *Id.* (citing *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999)). In contrast, "[t]he opposing public interest in knowing these names . . . [was] not immediately apparent." *Id.* This case is similar to *Judicial Watch* in that the State Department offers credible concerns regarding harassment and threats to SPEC staff members, and the public interest in their identities is similarly "not immediately apparent." *Id.*

Finally, the Court concludes that "disclosure would harm an interest protected by" Exemption 6. *Leopold*, 94 F.4th at 37 (quoting 5 U.S.C. § 552(a)(8)(A)(i)). "[W]hether a requested record falls within an exemption and whether the disclosure of that record would foreseeably harm an interest protected by the exemption are distinct, consecutive inquiries." *Id.* "Agencies, therefore, must provide 'a focused and concrete demonstration of why disclosure of the particular type of material at issue will . . . actually impede' the interests protected by a FOIA exemption." *Id.* (quoting *Reps. Comm.*, 3 F.4th at 370). The Department of State has explained that emails and social media posts contain threats to SPEC staff, and that the full, unredacted record may "operate as a 'hit list' subjecting civil servants to relentless attacks based solely on their association with SPEC." Biniaz Decl. ¶ 12. This represents a "focused and concrete demonstration of why disclosure of the particular type of material at issue will . . . actually impede" the privacy interests protected by Exemption 6. *Leopold*, 94 F.4th at 37 (quoting *Reps.*

*Comm.*, 3 F.4th at 370).  As such, the Department of State properly applied Exemption 6 to the record at issue and is entitled to summary judgment.

## V.  CONCLUSION

For the foregoing reasons, the Department of State's Motion to Dismiss and for Summary Judgment (ECF No. 8) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  January 30, 2025                                      RUDOLPH CONTRERAS
                                                             United States District Judge